UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | C.A. No. 18-cv-10434-NGE-APP |
| Plaintiffs, | |
| v. | |
| INTEGRATED MRI CENTER, LLC d/b/a COMPLETE IMAGING; ORCHARD LABORATORIES CORP. d/b/a ORCHARD TOXICOLOGY; NORTH WEST LABS, INC.; TOTAL HEALTH REHAB, INC.; SAMI AHMAD; and OMAR ELIAS a/k/a OMAR ASKER, | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT ORCHARD LABORATORIES CORP. D/B/A ORCHARD TOXICOLOGY'S AMENDED MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

Table of Contents ............................................................................................. i

Issues Presented ............................................................................................. ii

Statement of Controlling/Most Appropriate Authorities ........................................ iii

I.    Introduction ........................................................................................... 1

II.   Relevant Background ............................................................................. 2

III.  Allstate's Complaint Properly Pleads All Causes of Action ..................... 4

      A.    Standard of Review ...................................................................... 4

      B.    State Law Causes of Action ........................................................ 4

            1.    Common Law Fraud ........................................................ 4

            2.    Civil Conspiracy .............................................................. 6

            3.    Payment Under Mistake of Fact ..................................... 6

            4.    Unjust Enrichment .......................................................... 7

IV.   Subject Matter Jurisdiction ................................................................... 9

V.    There Is No Basis to Abstain ................................................................ 10

      A.    *Burford* Abstention Is Not Appropriate ...................................... 12

      B.    *Colorado River* Abstention Is Not Appropriate ........................... 15

      C.    Allstate's Request for Declaratory Relief Is Proper ..................... 20

VI.   Conclusion ........................................................................................... 25

## <u>ISSUES PRESENTED</u>

1.   Whether Allstate's Complaint sufficiently alleges state law and declaratory judgment causes of action?

     Allstate answers: Yes

     Defendant answers: No

2.   Whether <u>Burford</u> and <u>Colorado River</u> abstention doctrines are applicable to Allstate's Complaint?

     Allstate answers: No

     Defendant answers: Yes

3.   Whether the Court should exercise jurisdiction over Allstate's request for declaratory relief?

     Allstate answers: Yes

     Defendant answers: No

# STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 9(b)

Burford v. Sun Oil Co.
319 U.S. 315 (1943)

Colorado River Water Conservation Dist. v. United States
424 U.S. 800 (1976)

Cooper v. Auto Club Ins. Ass'n
751 N.W.2d 443 (Mich. 2008)

Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.
895 N.W.2d 490 (Mich. 2017)

Grand Trunk W. R.R. Co. v. Consol. Rail Corp.
746 F.2d 323 (6th Cir. 1984)

Kern v. City of Flint
335 N.W.2d 708 (Mich. Ct. App. 1983)

Nurse Notes, Inc. v. Allstate Ins. Co.
2012 U.S. Dist. LEXIS 38059 (E.D. Mich., March 21, 2012)

Phillip Diniaco & Sons, Inc. v. Max J. Colvin & Sons Trucking, Inc.
865 F.2d 1269 (6th Cir. 1988)

State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc.
2014 U.S. Dist. LEXIS 151213 (E.D. Mich., Oct. 24, 2014)

State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C.
2018 U.S. Dist. LEXIS 80361 (E.D. Mich., May 14, 2018)

State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.
2015 U.S. Dist. LEXIS 104332 (E.D. Mich., Aug. 10, 2015)

Wilton v. Seven Falls Co.
515 U.S. 277 (1995)

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs") hereby submit the within opposition to the motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by defendant Orchard Laboratories Corp. d/b/a Orchard Toxicology ("Orchard Toxicology") (*Docket No. 35*).

## I.   <u>INTRODUCTION</u>

Like its co-defendants, Orchard Toxicology's motion to dismiss ignores wide swaths of Allstate's Complaint and the exhibits thereto and also relies on a highly selective reading of the Complaint that ignores all of its most damning allegations.  Federal courts have condemned the practice of defendants ignoring the entire slate of allegations against them in order to propound dubious dismissal arguments: "The Defendants are characterizing Plaintiff's claim too narrowly by quoting one or two phrases from the Complaint and then concluding that those small portions are Plaintiff's entire case."  <u>McClain v. Coverdell & Co.</u>, 272 F. Supp. 2d 631, 638 (E.D. Mich. 2003) (denying defendants' motion to dismiss RICO claims).  Orchard Toxicology is guilty of the same transgression.

There is no question that Allstate has been injured by the defendants' (including Orchard Toxicology's) conduct.  Nor is there any question that Allstate has the right to choose the forum in which to have its injuries redressed (provided

all jurisdictional requirements are met, as they are here).  Orchard Toxicology, no doubt angry that its fraudulent conduct and exploitation of the No-Fault system has been exposed, chooses to waste time and judicial resources by its tenuous motion to dismiss.   Indeed,   Orchard   Toxicology's   motions   reveal   a   fundamental misunderstanding and misapplication of applicable law and an intentional failure to read the allegations of Allstate's Complaint.  Most critically, Orchard Toxicology ignores numerous decisions in this District wherein fraud claims brought by auto insurers against defendants exploiting statutory No-Fault benefits have been upheld.[1]  These decisions – discussed in detail in Allstate's opposition to the motion to dismiss filed by co-defendant Sami Ahmad ("Ahmad") (*see Docket No. 38*) – have rejected the exact same arguments raised by the defendants in the instant case.  For all of the reasons discussed herein, Orchard Toxicology's motion to dismiss must be denied.

## II.   **RELEVANT BACKGROUND**

The Complaint alleges that Orchard Toxicology billed Allstate for urine drug testing that was not actually performed, including by an example of a patient who confirmed through discussion with a representative of Orchard Toxicology that it had  no  record  of  performing  the  testing  for  which  it  had  submitted  charges  to

---

[1] Allstate annexes hereto at Exhibit A a chart which details several cases in this District wherein auto insurers prevailed in motions to dismiss against defendants who wrongly sought and received payment for unlawful and unnecessary medical treatment, treatment that was billed using improper coding, and unnecessary treatment that resulted from close referral relationships, all of which are alleged by Allstate in the instant case.

Allstate.  Id. at ¶¶ 150-154.  Orchard Toxicology also used improper testing policies, implemented through pre-printed requisition forms and standing orders, to perform urine drug testing that was medically unnecessary, unreasonable, excessive, and violative of applicable standards of care.  Id. at ¶¶ 455-459, 505-556.  Orchard Toxicology intentionally attempted to conceal this fact from Allstate by withholding critical records relevant to the testing it allegedly performed.  Id. at ¶¶ 460-482. Orchard Toxicology had an affirmative duty to ensure that it was only seeking reimbursement from Allstate for urine drug testing that was medically necessary.  Id. at ¶¶ 557-560.  Orchard Toxicology's scheme to defraud and misrepresentations are illustrated by the Complaint through specific, representative patient exemplars, id. at ¶¶ 565-632, and specifically itemized at Exhibit 2 to the Complaint.

In order to maximize the charges submitted to Allstate, Orchard Toxicology routinely billed Allstate using multiple Common Procedural Terminology ("CPT") Codes to describe the same purported testing (id. at ¶¶ 692-694), unbundled CPT Codes to bill separately for alleged procedures that are properly described by a single CPT Code (id. at ¶¶ 697-701), billed using CPT Codes that do not describe urine drug testing at all (id. at ¶ 699), billed using CPT Codes that were deleted from the CPT Code book (id. at ¶ 695), and billed using CPT Codes for non-specific procedures while also billing for the same testing using CPT Codes for specific procedures (id. at ¶¶ 702-706).  The Complaint also alleges that Orchard

Toxicology's biller has admitted that it charges Allstate more than other payors, which is expressly prohibited by the No-Fault Act.   Id. at ¶¶ 707-711.

## III.   ALLSTATE'S COMPLAINT PROPERLY PLEADS ALL CAUSES OF ACTION

### A.   STANDARD OF REVIEW

As set forth herein, Allstate's Complaint pleads in comprehensive detail the factual allegations supporting the causes of action against Orchard Toxicology. Section III.A of Allstate's opposition to the motion to dismiss filed by defendants Omar Elias a/k/a Omar Asker ("Elias"), Integrated MRI Center, LLC d/b/a Complete Imaging ("Complete Imaging"), North West Labs, Inc. ("North West Labs"), and Total Health Rehab, Inc. ("Total Health") addresses in detail the proper standard of review under Fed. R. Civ. P. 9(b), including Orchard Toxicology's misuse of the term "conclusory allegations," which Allstate hereby incorporates by reference.  *See* Docket No. 39.

### B.   STATE LAW CAUSES OF ACTION

#### 1.  Common Law Fraud

Orchard Toxicology's argument for dismissal of the common law fraud cause of action against it is inscrutable, with the root cause being its unreasonable and negligent misreading of paragraph 912 of the Complaint as referring to allegations contained in a separate <u>count</u> rather than a previous <u>section</u> of the Complaint (*Docket No. 35, pg. ID 994-995 compared with Docket No. 1, ¶ 912, which states that "[t]he*

*misrepresentations of fact made by the Count IX defendants include, but are not limited to, those material misrepresentations discussed in __section__ XI, supra"* [*emphasis added*]), coupled with its repeated failure to address the allegations of the Complaint as a whole. Obviously the facts supporting the common law fraud cause of action are not limited to facts contained in a separate count setting out a different cause of action; they are set forth throughout the Complaint (including but not limited to Section XI) and properly incorporated into the common law fraud count. *Docket No. 1, ¶¶ 910, 912.* When the entire slate of allegations against Orchard Toxicology is properly acknowledged, it is clear that the Complaint alleges that (1) Orchard Toxicology materially misrepresented that the urine drug testing services it billed were actually provided, were lawful, and were medically necessary (id. at ¶¶ 150-154, 455-459, 505-556), (2) that the urine drug testing services billed by Orchard Toxicology were not actually provided, were unlawful, were excessive, and were medically unnecessary in violation of applicable standards of care (id.), (3) that Orchard Toxicology acted with intent at the time of the false representations (id. at ¶¶ 15, 463, 466, 482, 558, 914), (4) that Allstate relied on the false representations (id. at ¶¶ 13, 18, 174, 334, 584, 599, 613, 631, 765, 767, 784, 916), and (5) that Allstate was damaged, both through payment of claims and costs incurred in investigating and adjusting the fraudulent submissions mailed by Orchard Toxicology (id. at ¶¶ 765, 767, 786-798, Exhibits 27-29). Thus, Allstate more than

meets the common law fraud elements proposed by Orchard Toxicology as set forth in Llewellyn-Jones v. Metro Prop. Grp., LLC, 22 F. Supp. 3d 760, 784 (E.D. Mich. 2014). *See Docket No. 35, pg. ID 995*.

### 2. Civil Conspiracy

Orchard Toxicology's argument for dismissal of the civil conspiracy cause of action again acknowledges only averments made in the count itself and ignores entirely the incorporated factual allegations meticulously detailed throughout the Complaint. *See Docket No. 1, ¶ 918* (incorporating all factual allegations). As Allstate properly incorporated the Complaint's factual allegations into its civil conspiracy count, there is no basis to ignore the detailed allegations of the fraud and conspiracy committed by the defendants. Orchard Toxicology's argument for dismissal of this count fails because, as set forth above, the underlying fraud tort is properly pleaded, and Allstate properly alleges that Orchard Toxicology and all other defendants agreed and acted in concert with one another to accomplish the fraudulent scheme alleged. *See, e.g., Docket No. 1, ¶ 919*.

### 3. Payment Under Mistake of Fact

Orchard Toxicology's argument for dismissal of Allstate's payment under mistake of fact cause of action again ignores the actual allegations of the Complaint. Specifically, Orchard Toxicology disregards that Allstate alleges that it justifiably relied on the submissions Orchard Toxicology mailed – which Orchard Toxicology

intentionally manipulated to create the appearance of propriety – in paying the bills at issue. When these Complaint allegations are acknowledged, Orchard Toxicology's argument that Allstate could have denied the claims at issue is rendered meaningless. Once Allstate discovered the truth about Orchard Toxicology's misrepresentations, Allstate commenced this suit seeking, *inter alia*, to recover the monies paid based on mistakes of fact regarding Orchard Toxicology's entitlement to No-Fault benefits. Even if Orchard Toxicology's attempt to use its own version of the facts were accepted (which it cannot be at the motion to dismiss stage), Michigan law is clear that "where one pays money to another by mistake, that person is entitled to recover the amount of the overpayment <u>even if the mistake is due to lack of investigation</u>." <u>Kern v. City of Flint</u>, 335 N.W.2d 708, 709 (Mich. Ct. App. 1983) (emphasis added). In fact, it is "a well-settled rule that payments made under a mistake of fact can be recovered <u>even if the mistake could have been avoided by the payor</u>." <u>Wilson v. Newman</u>, 617 N.W.2d 318, 320 (Mich. 2000) (emphasis added).

### 4. <u>Unjust Enrichment</u>

Like defendants Elias, Complete Imaging, North West Labs, and Total Health, defendant Orchard Toxicology attempts to use the <u>Covenant Med. Ctr. v. State Farm Mut. Auto. Ins. Co.</u>, 895 N.W.2d 490 (Mich. 2017) (<u>Covenant</u>) decision as a catch-all grant of immunity from all manner of statutory and common law causes of action

that are not addressed anywhere in the Michigan Supreme Court's Covenant decision. As discussed in Allstate's opposition to Elias, Complete Imaging, North West Labs, and Total Health's motion to dismiss (incorporated herein), there is no support for the contention that the Covenant decision means that individual insureds are liable for payments that were fraudulently induced by the defendants, which were paid directly to the defendants, and which were inequitably retained by the defendants. Unjust enrichment requires a plaintiff to prove two things: (1) receipt of a benefit by the defendant from the plaintiff and (2) that it would be inequitable for the defendant (including Orchard Toxicology) to retain the benefit. In re McCallum Estate, 395 N.W.2d 258, 261 (Mich. Ct. App. 1986). Allstate has itemized by date, payor, patient claim number, check number, and amount exactly those payments it tendered to the clinic defendants. *Docket No. 1, Exhibits 27 – 29.* Thus, Allstate has clearly satisfied the first requirement of an unjust enrichment count.

Allstate has also painstakingly pleaded why it would be inequitable for the defendants to retain the monies received from Allstate: because they utilized unlawful kickbacks and solicitation for the purpose of obtaining patients on whom to force excessive and medically unnecessary treatment and services, thus generating thousands of claims and hundreds of thousands of dollars in payments for fraudulent unnecessary treatment rendered in clear violation of the No-Fault Act. Allstate's

allegations in this regard are supported by more than a dozen exemplar claims and documentary and testimonial evidence. Moreover, it was the defendant entities that actually received these improper benefits, not Allstate's insureds. Allstate's Complaint more than adequately sets forth a cause of action for unjust enrichment.

Orchard Toxicology also argues that unjust enrichment is not available where there is an express contract between Allstate and its insured. Fatally, however, there is no contract, express or otherwise, between Allstate and the defendants. This District has rejected this argument numerous times. *See, e.g.,* Nurse Notes, Inc. v. Allstate Ins. Co., 2012 U.S. Dist. LEXIS 38059, *6-*8 (E.D. Mich., March 21, 2012) (No-Fault provider "has not shown it has a contract with Allstate to provide services. The agreement is between [the insured] and Allstate."); State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C., 2018 U.S. Dist. LEXIS 80361, *24 (E.D. Mich., May 14, 2018) (disposing of an identical argument made by a healthcare provider because contracts between an insurer and its insureds are not "between the same parties on the same subject matter" [emphasis original]). As there is no contract or even an allegation of a contract between Allstate and the instant defendants, Allstate's unjust enrichment count must stand.

## IV.   **SUBJECT MATTER JURISDICTION**

Orchard Toxicology's argument regarding subject matter jurisdiction is materially identical to that set forth by defendants Elias, Complete Imaging, North

West Labs, and Total Health.  Therefore, Allstate incorporates Section IV of its opposition to the motion to dismiss filed by those defendants, which addresses at length this Court's subject matter jurisdiction.  *See* Docket No. 39.  Moreover, this argument was recently attempted in a separate case by a urine drug testing facility against which, as with Orchard Toxicology here, RICO causes of action were not alleged.  The court held that "[b]ecause the Courts finds that the civil RICO claims [against the individuals who owned and managed the urine drug testing laboratory] do not fail substantively at this pleading stage, the Court continues to exercise supplemental jurisdiction over the state law claims which are inextricably intertwined with the federal claims."  Allstate Ins. Co. v. Total Toxicology Labs, LLC, 2017 U.S. Dist. LEXIS 134517, \*28‑\*29 (E.D. Mich., Aug. 23., 2017).

## V.   THERE IS NO BASIS TO ABSTAIN

Orchard Toxicology cites a number of abstention doctrines in its motion for why this Court should decline jurisdiction over this case.  As itemized below, each is without merit and each ignores well-settled jurisprudence.  This is a RICO and fraud case. There is no more apt forum to hear this matter than this Court.  Moreover, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). *See also* Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (Colorado River) (noting the "virtually unflagging obligation of the

federal courts to exercise the jurisdiction given them"). The U.S. Supreme Court has also held that "[a]bstention from the exercise of federal jurisdiction <u>is the exception, not the rule</u>." <u>Colorado River</u>, 424 U.S. at 813 (emphasis added). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an <u>extraordinary and narrow exception</u> to the duty of a District Court to adjudicate a controversy properly before it." <u>Id.</u>, quoting <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188 (1959) (emphasis added).[2]

The filing of Allstate's Complaint in federal court is not as extraordinary as Orchard Toxicology would have this Court believe. Countless decisions within the Sixth Circuit, including all of those set out in Exhibit A hereto, conclusively confirm that federal courts routinely exercise jurisdiction over matters related to Michigan's No-Fault Act and that neither dismissal nor abstention is appropriate. As has been explained on multiple occasions by courts in this District:

> Defendants argue that because Michigan's no-fault insurance system is unique to Michigan, determination of any no-fault case should be left to state courts. The primary evidence relied on for the "substantial public import" prong of <u>Burford</u> abstention is the large number of state-court cases involving litigation of no-fault insurance claims. Every owner or registrant of a motor vehicle in the state of Michigan is required to carry no-fault insurance on the vehicle in question. M.C.L.

---

[2] Allstate also notes that "even when abstention is appropriate, a district court should stay, not dismiss, the federal suit." <u>Habich v. City of Dearborn</u>, 331 F.3d 524, 534 (6th Cir. 2003). *See also* <u>Gilbertson v. Albright</u>, 381 F.3d 965, 975 (9th Cir. 2004) ("abstention principles have been applied to actions at law only to permit federal courts to stay adjudication, not to dismiss the federal suit altogether").

§ 500.3101.  Litigation will inevitably ensue on a variety of fronts as a result of automobile accidents.  That there are a number of lawsuits in Michigan state courts under no-fault laws does not mean that any claim related to no-fault insurance is a matter of "substantial public import."  It means that Michigan residents bring Michigan state law claims in Michigan courts.  Moreover, this is not a no-fault case.

State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc., 2014 U.S. Dist. LEXIS 151213, *24-*25 (E.D. Mich., Oct. 24, 2014) (denying defendants' motion to dismiss, including all abstention arguments).  *See also* Vital Community Care, 2018 U.S. Dist. LEXIS 80361, *11. [3]

### A.  *Burford* Abstention Is Not Appropriate

Orchard Toxicology argues that this Court should decline jurisdiction pursuant to the abstention doctrine set forth in Burford v. Sun Oil Co., 319 U.S. 315 (1943) (Burford).  "Burford abstention is used to avoid conflict with a state's administration of its own affairs."  Rouse v. DaimlerChrysler Corp. v. UAW Non-Contributory Plan, 300 F.3d 711, 716 (6th Cir. 2002).  "It applies only if a federal court's decision on a state law issue is likely to 'interfere with the proceedings or orders of state administrative agencies.'"  Id., quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989).  The application of Burford abstention arises only where (1) the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance

---

[3] The decision in Vital Community Care, which rejected almost all of the same arguments made by the defendant here, was issued nearly a year after the Michigan Supreme Court's ruling in Covenant, thus illustrating that it does not carry the significance ascribed by the defendants in the context of fraud lawsuits such as this.

transcends the result in the case then at bar" or (2) adjudication of the case in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Quackenbush, 517 U.S. at 726-727, quoting New Orleans Pub. Serv. Inc., 491 U.S. at 361.

The Burford doctrine is inapplicable here in every way. First, and fatally, there is no state agency involved. Rouse, 300 F.3d at 716 ("The Burford abstention doctrine is inapplicable here for several reasons. First, there is no state administrative agency involved in the dispute."). Orchard Toxicology concedes as much, arguing only that this Court should abstain in favor of the Michigan state courts (i.e., not in favor of an agency) because Allstate's Complaint references the Michigan No-Fault Act. But Orchard Toxicology does not even attempt to identify any agency or administrative proceedings or orders that could possibly be affected by Allstate's Complaint. This is fatal to Orchard Toxicology's Burford abstention argument. See Habich, 331 F.3d at 533 (in rejecting the application of Burford abstention, the court held: "[t]his case is far different from Burford, which involved a federal plaintiff's attempt to enjoin the execution of an order regarding the drilling of certain wells in a heavily-state-regulated oil field. . . . where the federal proceedings could conceivably undermine an entire regulatory scheme that depended on uniformity"); see also Allstate Ins. Co. v. Elzanaty, 916 F. Supp. 2d 273, 291 (E.D.N.Y. 2013); Allstate Ins. Co. v. Medical Evaluations, P.C., 2014 U.S.

Dist. LEXIS 76969, *6 (E.D. Mich., June 6, 2014) (denying the defendants' motion to dismiss and contrasting No-Fault system with "the comprehensive administrative system Michigan enacted to address and adjudicate workers-compensation claims").

Second, this case does not present difficult questions of state law. As the Court in State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 2015 U.S. Dist. LEXIS 104332 (E.D. Mich., Aug. 10, 2015), noted when presented with an identical argument, "Plaintiff does not challenge the no-fault scheme itself, or any state decision – administrative or otherwise – based on those statutory provisions. Instead, Plaintiff claims that Defendants acted fraudulently – conduct the no-fault scheme also seeks to prevent." 2015 U.S. Dist. LEXIS 104332, *45. The state law counts asserted by Allstate (common law fraud, civil conspiracy, unjust enrichment, and payment under mistake of fact) are long-established causes of action with developed case law. There are no important public policy decisions to be made by this Court's application of the facts alleged by Allstate to these state law counts. It is utterly unclear how this Court presiding over this case could possibly implicate the Michigan No-Fault Act. No one can dispute that the Michigan Legislature certainly did not intend to permit fraud to occur unchecked by persons abusing the No-Fault Act, which is the sole issue presented by Allstate's Complaint. Fraud in derogation of the No-Fault Act is by definition not conduct contemplated by the No-Fault Act.

14

### B. *COLORADO RIVER* ABSTENTION IS NOT APPROPRIATE

Orchard Toxicology also argues that this Court should abstain from exercising jurisdiction over Allstate's state law causes of action pursuant to Colorado River, which permits district courts to abstain from jurisdiction in favor of a parallel state court proceeding.  In so arguing, Orchard Toxicology improperly attempts to frame this dispute as merely a collection of no-fault cases, a characterization that has been previously rejected by courts in this District.  *See, e.g.,* Warren Chiropractic, 2015 U.S. Dist. LEXIS 104332, * 37 (rejecting the defendants attempt to "frame[] this dispute as nothing more than a combination of many independent state court no-fault actions").  As detailed above and by the Complaint, this is a case about a comprehensive fraudulent scheme perpetrated by the defendants that abused the availability of benefits under the No-Fault Act to induce payments from Allstate. This case is not parallel to any no-fault action, and therefore the defendants cannot meet their burden to prove that abstention is proper.  Id. at *39, citing Answers in Genesis of Ky., Inc. v. Creation Ministries, Int'l, Ltd., 556 F.3d 459, 467 (6th Cir. 2009).

In this District, "[a] court may defer to a parallel proceeding only in the rare situations where abstaining would strongly promote judicial economy and a 'comprehensive disposition' of the litigation."  Ajuba Int'l, LLC v. Saharia, 871 F. Supp. 2d 671, 680 (E.D. Mich. 2012).  "Colorado River abstention requires a two-

part analysis. As a threshold matter, the Court must address the question of whether or not the two proceedings are parallel." <u>Gentry v. Wayne County</u>, 2010 U.S. Dist. LEXIS 123365, *5 (E.D. Mich., Nov. 22, 2010). "If the proceedings are found to be parallel, the Court next considers the balancing-test factors described in <u>Colorado River</u> to determine if abstention will actually serve the end of efficient court administration." <u>Id</u>.

      <u>Colorado River</u> is wholly inapplicable to this case because there are no parallel state court cases. Orchard Toxicology identifies three (3) state court cases that are presently pending, but does not make a serious effort to argue that such cases are parallel. To be parallel, the pending state court proceeding must "be an adequate vehicle for the <u>complete</u> and prompt resolution of the issues between the parties." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 28 (1983) (reversing lower court's stay of proceedings) (emphasis added). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." <u>Id</u>. Orchard Toxicology fails to advise the Court that on March 29, 2018, it filed a brief in one of the three (3) state court cases it identifies (*Docket No. 35-3*) in which it concedes that its state action is not parallel to the instant matter (which it refers to as the "federal action"). Specifically, Orchard Toxicology:

- "denies the federal action is relevant to the [state] action";

- "denies that the federal action involves the same parties and the same claims"; and

- admits that "the instant action is merely seeking the payment of past due, no-fault benefits. The federal action contains multiple allegations of fraud, misrepresentation, and solicitation against not only [Orchard Toxicology], but several other parties."

*Orchard Toxicology's brief is attached hereto at Exhibit B*.[4] Orchard Toxicology's concession in state court confirms that Allstate seeks relief that is not raised in any no-fault action filed by any of the defendant entities.

Most critical to the parallelism analysis is whether there is substantial similarity between the parties and issues in both suits. Baskin v. Bath Twp. Bd. of Zoning Appeals, 15 F.3d 569, 572 (6th Cir. 1994) (finding no parallelism as "it is immediately apparent that the state and federal actions involved in this case do not possess the required identity of parties and issues"). As admitted by Orchard Toxicology, the instant case involves multiple parties who are not involved in any state court litigation, including Ahmad and Elias. There also would not be commonality of issues in any state court case. As explained by the court in Allstate Ins. Co. v. Universal Health Group, Inc.:

> [E]ven if Allstate may assert fraud as a defense in those state court proceedings, that does not render those proceedings "parallel" to this federal action. The issue of whether Defendants in this action engaged in a conspiracy to defraud Allstate will not be litigated. Any state court proceeding does not involve the majority of the defendants named by Allstate in its federal Amended Complaint. Further Allstate's current

---

[4] The complaint filed by Orchard Toxicology in the state court case, attached to its brief as Exhibit 2, is nearly identical to the complaints filed by Orchard Toxicology in the two (2) other cases it identifies. *See Docket Nos. 35-6 and 35-7.* Therefore, Orchard Toxicology's admission that the first state court case is not parallel is equally applicable to all three (3) cases.

> request for reimbursements for claims already paid will not be
> adjudicated in the state court litigation.

13-cv-15108-LVP-EAS, Docket No. 229, pp. 15-16.  Thus, the state court cases

identified by Orchard Toxicology cannot be parallel because this action is the only

opportunity for Allstate to litigate the overarching fraudulent conspiracy perpetrated

by the defendants and to recoup its damages.

Orchard Toxicology attempts to argue that Allstate's request for a stay of one

of the three (3) pending state court suits supports a finding of parallelism.  This

untenable argument is not borne out by Allstate's actual arguments in the state court

proceedings, especially Allstate's argument that this federal action will resolve far

more claims than the state court proceedings (because it includes RICO, fraud, unjust

enrichment, and payment under mistake of fact counts, in addition to declaratory

relief related to pending claims) against far more parties than the state court

proceedings (because most of the named defendants here have never previously

engaged in litigation with Allstate, including Ahmad, Elias, and North West Labs).

*See Docket No. 35-4.*

Herein lies the dispositive point to this Court's abstention decision: this one

federal action will resolve eight (8) counts of RICO violations, fraud, conspiracy,

unjust enrichment, and payment under mistake of fact against six (6) separate

defendants related to years of fraudulent conduct and hundreds of patients.  At best,

the three (3) pending state court cases will resolve questions of No-Fault benefits

related to three (3) patients and only as between Allstate and Orchard Toxicology (not the other five (5) named defendants herein). "[I]n deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action . . . ." Baskin, 15 F.3d at 572. This comparison militates that this Court exercise its jurisdiction. The "comprehensive disposition" of litigation required by Colorado River, 424 U.S. at 817, is only possible in the federal case, as not a single one of Allstate's causes of actions is pending before a state court. Nor can Allstate's fraud counts here be deemed the functional equivalent of the No-Fault violation claims at issue in the three (3) pending state court suits. *See* Cooper v. Auto Club Ins. Ass'n, 751 N.W.2d 443, 448 (Mich. 2008) ("[a] fraud claim is clearly distinct from a no-fault claim [as] a fraud claim requires proof of additional elements such as deceit, misrepresentation, or concealment of material facts"); Williams v. State Farm Ins. Co., 781 F. Supp. 2d 519, 523 (E.D. Mich. 2011), quoting Cooper, 751 N.W.2d at 448 ("an action for fraud is not an action that is based on the No-Fault Act [but rather] 'an independent and distinct action for recovery of damages payable under the common law'"). Moreover, the damages Allstate seeks by its counts here necessarily cannot include any of the medical treatment at issue in the three (3) pending state court suits as those suits seek unpaid benefits.

19

Thus, Orchard Toxicology's specious "parallel proceedings" abstention arguments quickly unravel. First, there are hardly any <u>pending</u> state court cases that could possibly be parallel to the instant federal action. Second, as conceded by Orchard Toxicology, even those few pending state court proceedings in existence involve far fewer parties and far less complex issues and causes of action than this federal matter. Third, the pending state court cases necessarily involve only unpaid bills and therefore cannot possibly implicate the more than $650,000 in claims that Allstate has already paid and which constitute Allstate's damages here related to its RICO, fraud, civil conspiracy, unjust enrichment, and payment under mistake of fact counts. <u>Colorado River</u> abstention is inapplicable in every way.

### C. <u>ALLSTATE'S REQUEST FOR DECLARATORY RELIEF IS PROPER</u>

As stated in 28 U.S.C. § 2201, declaratory relief requires only that an "actual controversy" exist "within [the court's] jurisdiction" between "interested part[ies]." *See also* <u>Medimmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 126-127 (2007). There is an actual controversy between Allstate and the defendants (including Orchard Toxicology), all of whom are interested parties, as to the defendants' misrepresentations of lawfulness and necessity under the Michigan No-Fault Act in their submission of bills to Allstate. The factual and legal dimensions of the dispute between the parties are well-defined and fit for judicial resolution, including the declaratory relief Allstate seeks.

Orchard Toxicology argues that this Court should decline jurisdiction over Allstate's request for declaratory relief, citing Wilton v. Seven Falls Co., 515 U.S. 277 (1995), and Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942). Orchard Toxicology's reliance on these cases is misplaced. Like Colorado River abstention, discussed *supra*, the doctrine established by these cases requires that there be "parallel" state court proceedings for a court to decline jurisdiction. The defendants have not identified (and cannot identify) a single parallel state court proceeding.

Moreover, the Wilton doctrine is wholly inapplicable where, as here, the complaint seeks coercive relief in addition to a declaratory judgment. New Eng. Ins. Co. v. Barnett, 561 F.3d 392, 394-395 (5th Cir. 2009). In such cases, the more stringent Colorado River standard, with its "narrowly circumscribed" discretion and requirement for "exceptional circumstances," must be applied. Id. Orchard Toxicology seems to acknowledge the deficiencies in its arguments, but posits, without support, that Allstate is not seeking enough money from it to apply binding precedent. *Docket No. 35, pg. ID 1006-1007.* There is no such threshold to the amount of coercive relief required to make the Wilton doctrine inapplicable. Judge Levy responded to a similar request made in a factually-analogous fraud case by stating:

> The Court will not abstain here, particularly where the declaratory judgment action is inextricably dependent on and connect[ed] to the

21

underlying substantive counts . . . . the Court does not believe it is a wise use of its discretion to decline to entertain a declaratory judgment action tied to a viable federal cause of action.

Universal Health Group, Inc., 2014 U.S. Dist. LEXIS 151213, *25-*26.  *See also* State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, LLC, 9 F. Supp. 3d 1303, 1308-1309 (M.D. Fla. 2014) (noting that the Wilton/Brillhart doctrine is inapplicable where the plaintiff requests mixed forms of relief); State Farm Mut. Auto. Ins. Co. v. Schepp, 616 F. Supp. 2d 340, 347 (E.D.N.Y. 2008) (Wilton/Brillhart doctrine "does not apply because plaintiffs seek, in addition to declaratory relief, damages based on theories of fraud and unjust enrichment").

Even if the defendants were able to identify a parallel state court proceeding, declining jurisdiction is improper here.  There are five factors that a court must consider when determining whether to exercise discretion and decline to decide a request for declaratory relief that is properly pending before it: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for *res judicata*'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,

746 F.2d 323, 326 (6th Cir. 1984). All of these factors support this Court exercising its jurisdiction over Allstate's request for declaratory relief.

The declaratory relief sought by Allstate will settle any issues that could foreseeably be raised by the hypothetical parallel litigation Orchard Toxicology alludes to, as the declaration sought by Allstate addresses the overarching question of whether Orchard Toxicology can meet its preliminary burden under the No-Fault Act to prove that its charges are lawful, medically necessary, reasonable, and customary. A declaration that the charges submitted by Orchard Toxicology are unlawful, unnecessary, unreasonable, and uncustomary (or were not actually rendered) means that they are not compensable under the No-Fault Act. *See* Mich. Comp. Laws § 500.3107(1)(a); Nasser v. Auto Club Ins. Ass'n., 435 Mich. 33, 49 (1990). Imparting such a resolution serves a useful purpose by clarifying the dispute between the parties, which will assist in guiding the parties' conduct.[5]

Orchard Toxicology's argument regarding the third Grand Trunk factor (procedural fencing) is that Allstate should sit back and continue to be victimized by the defendants' fraudulent submissions because it is permitted to defend itself only if and when an individual insured (or a provider, through an assignment of benefits) decides to file suit. This argument evidences a misunderstanding of the term

---

[5] These first two (2) Grand Trunk factors are "closely related" and "often considered in connection" with one another. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008).

"procedural fencing."  The term refers to "a range of tactics that courts regard as unfair or unseemly."  Western World Ins. Co. v. Hoey, 773 F.3d 755, 761 (6th Cir. 2014).  Orchard Toxicology makes no effort to explain how filing an action seeking a declaratory judgment is inherently unfair or unseemly and there is no precedent suggesting that filing an action that is specifically authorized by statute and the common law can be construed as "procedural fencing."

Nor will the declaratory relief Allstate seeks increase friction between federal and state courts as Michigan state courts do not have exclusive jurisdiction over claims implicating the No-Fault Act.  Finally, there is no alternative remedy better or more effective than this single case resolving all of the disputes between the parties.

As set out above, all of the Grand Trunk factors militate in favor of exercising jurisdiction.  "[T]he power to grant declaratory relief in an appropriate case having been conferred upon federal courts by Congress, such relief is not lightly to be denied."  Ohio Casualty Ins. Co. v. Farmers Bank of Clay, 178 F.2d 570, 575 (6th Cir. 1949).  Having met all jurisdictional prerequisites, Allstate is entitled to the forum of its choosing to resolve the dispute between it and the defendants.  Allstate has chosen federal court.  Orchard Toxicology does not offer any valid reason why Allstate should be denied its constitutional right in this regard.

## VI.   **CONCLUSION**

For the reasons set forth herein, Orchard Toxicology's motion to dismiss must

be denied.

Respectfully submitted,

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*

_____

Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
Andrew H. DeNinno
adeninno@smithbrink.com
350 Granite Street, Suite 2303
Braintree, MA  02184
617-770-2214 (phone)

38777 Six Mile Road, Suite 314
Livonia, MI  48152

Dated: May 24, 2018                         *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Jacquelyn A. McEttrick, counsel for Plaintiffs, hereby certify that on May 24, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*
_____
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite St., Suite 2303
Braintree, MA 02184
(617) 770-2214