UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; and
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

                  Plaintiffs,

                                             Case No. 18-cv-10434

v.                                       Hon. Nancy G. Edumunds
                                         Mag. Anthony P. Patti

INTEGRATED MRI CENTER, LLC
d/b/a COMPLETE IMAGING;
ORCHARD LABORATORIES CORP.
d/b/a ORCHARD TOXICOLOGY;
NORTH WEST LABS, INC.;
TOTAL HEALTH REHAB, LLC;
SAMI AHMAD; and OMAR ELIAS
 a/k/a OMAR ASKER,
                      Defendants.

_____/

## REPLY IN SUPPORT OF SAMI AHMAD'S MOTION TO DISMISS COMPLAINT UNDER FED R. CIV. P. 12(b)(6) AND TO STRIKE ALLEGATIONS UNDER FED. R. CIV. P. 12(f)

## <u>TABLE OF CONTENTS</u>

Statement of Controlling or Most Appropriate Authority .........................................i

I.   Introduction.......................................................................................1

II.  Argument .........................................................................................1

     A.   The Complaint Fails to Allege Participation in a
         RICO Enterprise ........................................................................1

     B.   Allstate Fails to Allege that Ahmad Engaged in
         Racketeering Activity................................................................5

     C.   Allstate Fails to Allege a RICO Conspiracy .........................................6

III. Conclusion .......................................................................................7

## <u>STATEMENT OF CONTROLLING</u>
## <u>OR MOST APPROPRIATE AUTHORITY</u>

*Allstate Ins. Co. v. Siegel*, 312 F. Supp. 2d 260 (D. Conn. 2004)

*Paycom Billing Servs. v. Payment Res. Int'l.,* 212 F.Supp. 2d 732
      (W.D. Mich. 2002)

I.    *Introduction:*

Allstate's Response shows that its Complaint is built on a conclusion, not well-pleaded facts.  Allstate alleges Ahmad is an owner of the Defendant Facilities, and then concludes that he must "control" or "manage" those Facilities, and therefore, must have participated in the alleged RICO activities.  As explained below and in Ahmad's principle brief, these conclusions are not supported by allegations of particular facts, and Allstate fails to state a claim against Ahmad.

II.   *Argument:*

A.    **The Complaint Fails to Allege Participation in a RICO Enterprise**

RICO applies only to a defendant who is "employed by or associated with" an "enterprise" and "conducts or participates, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."   18 U.S.C. § 1962(c).  This test "is a very difficult test to satisfy.... There is a substantial difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient[.]" *Allstate Ins. Co. v. Siegel*, 312 F. Supp. 2d 260, 274 (D. Conn. 2004) (internal quote marks and citation omitted).  Because Allstate's RICO claim is predicated on an alleged scheme of mail fraud, each element of the claim must be alleged with particularity.  *ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Allstate's Complaint alleges, at most, that the Defendant Facilities engaged

in a fraudulent scheme, and that Ahmad and Elias own and control the facilities. But, Allstate's allegations that Ahmad "owns and controls" the Defendant Facilities are mere statements of conclusions. *Bright v. Roadway Servs.*, 846 F. Supp. 693, 699 (N.D. Ill. 1994) ("[P]laintiff's conclusory allegation that Roadway is liable for Spartan's acts because it 'owns and controls' Spartan is insufficient as a matter of law to state a claim against Roadway."); *Adams v. Madison Realty & Dev., Inc.*, 1989 U.S. Dist. LEXIS 4205 at *18-19 (D.N.J. April 21, 1989) ("A conclusory assertion of ownership and control, unbuttressed by supporting factual allegations, lacks the independent basis to support such a claim[;] an allegation of control must be accompanied by factual circumstances indicating control."). (**Exhibit 1**).

In its Response, Allstate argues, "As owners and managers, Ahmad and Elias are the individuals who had complete responsibility for [the Defendant Facilities] and all of their actions." (Dkt. # 38, Pg ID 1101). Allstate does not cite any allegations of the Complaint to support this conclusion. As just mentioned, the Complaint does not allege facts showing that either Ahmad, Elias, or both of them "manages" any of the Defendant Facilities. Further, the Complaint does not allege particular facts showing that Ahmad's ownership interest gave him any kind of control over any of the Defendant Facilities. Nowhere does the Complaint allege Ahmad's percentage interest in the Defendant Facilities or his actual role, if any, in

managing the Facilities.[1]

Allstate also argues, "The position taken by Ahmad would require the Court to make an impossible assumption that the defendant entities conducted themselves without any control by individuals (let alone control by their owners and managers, Ahmad and Elias.").  (Dkt. # 38, Pg ID 1101).  This statement mischaracterizes Ahmad's argument.   The point is not that nobody manages the Defendant Facilities, but that Allstate does not plead particular facts showing that Ahmad had a role in managing the Defendant Facilities.  Instead, Allstate merely pleads its conclusion that Ahmad is a "manager of" or he "managed the operations of" the Defendant Facilities.  In other words, Ahmad does not suggest that the Defendant Facilities conducted themselves.  It is equally as likely that Elias conducted the affairs of the entities with no help from Ahmad, a mere passive owner, or that employee-managers conducted the affairs with no help from either Ahmad or Elias.[2]  The point is that Allstate has not alleged particular facts showing Ahmad's participation in the alleged RICO Enterprises.

On pages 15-16 of its Response, Allstate purports to summarize in six bullet-

---

[1] Allstate's reliance on *Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C.*, 2011 U.S. Dist. LEXIS 130721 (E.D.N.Y. Nov. 9, 2011), is misplaced.  There, the plaintiff alleged facts showing the management defendants actually participated in the alleged enterprise, rather than just stating a conclusion that they did.  *Id*. at *20-21).

[2] Allstate's Complaint even acknowledges that Orchard Toxicology and Northwest Labs may have "owners and managers" other than Ahmad and Elias. (Dkt. # 1, ¶ 558).

{01394964.DOCX }

points the "participation by Ahmad." Allstate then cites close to 200 paragraphs of the Complaint to support its summary. Notably, however, Allstate does not tie any of the bullet points to the cited paragraphs, leaving it to this Court to sift through the cited paragraphs to find the alleged particular facts Allstate claims to be summarizing. A review of the bullet points shows the Complaint does not support Allstate's summary:

- Allstate claims Ahmad "owned and managed" the Defendant Facilities. But, as discussed above, no particular facts are alleged showing he actually managed the Facilities or that his ownership gave him any degree of control over the Facilities.

- Allstate claims Ahmad used "marketing services agreements" to "pay and conceal kickbacks." This is not so. Rather, the Complaint alleges that Complete Imaging used "marketing services agreement." (Dkt # 1, ¶¶ 178-81). There is no allegation showing that Ahmad had any involvement in these agreements, or otherwise directed the affairs of Complete Imaging. At most, Allstate alleges the "defendants" presented the marketing services agreements to providers. The generic use of the word "defendants" is not sufficient to state a claim against individual defendants. *Paycom Billing Servs. v. Payment Res. Int'l.*, 212 F. Supp. 2d 732, 737-38 (W.D. Mich. 2002).

- Allstate claims Ahmad "developed improper referral arrangements with physicians that he was aware engaged in unlawful solicitation of patients." But, the Complaint only alleges that, years ago, Ahmad *received* kickbacks from doctors to whom Ahmad referred patients. None of those patients are at issue here. Instead, this case is based on Ahmad allegedly "paying kickbacks." (Dkt. # 1, ¶ 175). The Complaint does not allege particular facts connecting Ahmad to any kickback payments; only general allegations lumping together the "defendants" and claiming Ahmad "owned and controlled" the Defendant Facilities.

- Allstate claims Ahmad "submitted and caused the defendant entities to submit false documentation" supporting claims.  This is not so.  At most, the Complaint alleges the Defendant Facilities submitted false documentation.  Allstate does not allege facts showing Ahmad either directly or tacitly participated in the submission of false documentation, except its conclusory allegation that Ahmad owns and manages the Facilities.  See *Paycom Billing Servs.*, *supra*.

- Allstate claims "Ahmad instituted policies and protocols designed to induce the ordering and performance of medically unnecessary testing and treatment, submitted charges for such testing and treatment at unreasonable amounts, and used fraudulent billing practices to further increase the total amount billed to Allstate."  Again, the Complaint does not plead facts showing that Ahmad was involved in any of these activities.  At most, the Complaint alleges that the Defendant Facilities engaged in these activities, and that Ahmad "owns and controls" the Facilities.

- Allstate claims that Ahmad concealed fraudulent billing by "directing that documents that would expose truth [sic] of the services billed be withheld from Allstate."  The Complaint contains only a single allegation supporting this statement, and it cannot support a fraud claim, as discussed below.  (Dkt. # 1, ¶ 461).  That allegation explicitly relates to Orchard Toxicology.  There is no similar allegation relating to any of the other alleged RICO enterprises.

**B.    Allstate Fails to Allege that Ahmad Engaged in Racketeering Activity**

In its brief, Allstate claims "Ahmad caused the mails to be used in furtherance of the above-detailed scheme to defraud."  (Dkt. # 38, Pg ID 1106).  But, the allegations Allstate cites merely allege that the "Defendant Facilities, at the direction and with the knowledge of Ahmad and Elias," used the mails.  (Dkt. # 1, ¶ 781, 801, 829, 857, 884).  Allstate does not plead any particular facts showing Ahmad's knowledge or direction of the use of the mails in a scheme to defraud.

Similarly, Allstate argues the Complaint shows "the defendants, including Ahmad, intentionally misstated the facts, lawfulness, and medical necessity of the services for which they mailed bills to Allstate." (Dkt # 38, Pg ID 1107-08). But, the paragraphs Allstate cites do not support this claim. Those paragraphs either (1) do not mention Ahmad at all, (2) allege that "defendants" did various things, or (3) generically state that as an "owner and manager" of the Facilities, "Ahmad was responsible for the unlawful, medically unnecessary, and unreasonably charged services[.]" (See e.g. Dkt # 1, ¶ 43). This is insufficient to state a claim against Ahmad. *Paycom, supra*.

The closest Allstate comes to alleging a particular fact is its claim that Ahmad directed the biller at Orchard Toxicology not to send medical records when mailing bills. (Dkt. # 1, ¶ 461). This act, though, could hardly be fraudulent as Allstate admits in the next paragraph that it had the ability to request records before paying bills. (Dkt. # 1, ¶ 462). *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 414-15 (2008) (A party cannot claim fraud if it has access to contrary information). Further, this allegation relates only to Orchard Toxicology. There is no other allegation of particular facts showing that Ahmad knew of any scheme to defraud by the other Defendant Facilities/Enterprises.

## C. <u>Allstate Fails to Allege a RICO Conspiracy</u>

Allstate's RICO conspiracy claims require it to allege an agreement to

participate in the affairs of an enterprise through a pattern of racketeering activity.

*Heinrich v. Waiting Angels Adoption Services*, 668 F.3d 393, 411 (6th Cir 2012).

Here, Allstate only alleges in boilerplate fashion, with no particular facts, that an

agreement existed.  (See e.g. Dkt. # 1, ¶ 783).  Allstate argues an agreement existed

because both defendants "played a role in the overall scheme to defraud Allstate by

submitting claims through the U.S. Mail."  (Dkt. # 38, Pg ID 1110).  But, as

explained above, Allstate has not alleged particular facts showing Ahmad's

participation in such a scheme.  There are no particular facts showing Ahmad

agreed to aid and abet the commission of mail fraud by any of the Facilities.

## III.    *Conclusion:*

The Complaint does not allege facts plausibly showing that Ahmad

conducted a RICO enterprise or engaged in any acts of mail fraud.  For the reasons

discussed above and in Ahmad's principle Brief, this Court should dismiss Counts

I, II, III, IV, V, VI, VII, VII, IX, X, and XIII as they relate to Ahmad.

By:    /s/ Ronald L. Cornell, Jr.
Ronald L. Cornell, Jr. (P46860)
David F. Hansma (P71056)
Attorneys for Defendants Ahmad and
Orchard Toxicology, only
2000 Town Center-Ste. 1500
Southfield, MI 48075
Telephone: (248) 353-7620
rcornell@seyburn.com
Dated:  August 29, 2018          dhansma@seyburn.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 29, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.

<div style="margin-left: 40%;">

By:    /s/ Ronald L. Cornell, Jr.
Ronald L. Cornell, Jr. (P46860)
David F. Hansma (P71056)
Attorneys for Defendants Ahmad and Orchard Toxicology, only
rcornell@seyburn.com
dhansma@seyburn.com

</div>

{01394964.DOCX }